# White v. PennDOT

*George M. Schroek,* for plaintiffs.
*John M. Walford,* for defendant.
*Brian H. Baxter,* for the commonwealth.
*John W. McCandless,* for additional defendant Engstrom.

WOLFE, *P.J.,* November 30, 1988—The pleadings are closed and defendant, Commonwealth of Pennsylvania, Department of Transportation (PennDOT), and additional defendant, David A. Engstrom, have moved for summary judgment pursuant to rule 1035 of the Pa. Rules of Civil Procedure.

Plaintiffs, as administrators of the estate of Raymond J. White, filed their complaint alleging decedent's wrongful death on June 11, 1987, resulting from injuries received in a three-vehicle accident that occurred on December 20, 1986, on what is known locally as the Busti-Sugar Grove Road, two-tenths of a mile from the Pennsylvania-New York state line in Warren County, Pa.

The essence of plaintiffs' cause against PennDOT is it failed to apply anti-skid material upon the road

surface of the highway where the accident occurred and as a result the road surface was "icy, slippery and dangerous," all of which was the direct proximate cause of decedent's injury and subsequent demise. PennDOT's defense is sovereign immunity and the lack of any common law duty to decedent under these circumstances.

The essence to support summary judgment for Engstrom are the extensive depositions concluding as a matter of law that Engstrom was in no way responsible for decedent's injuries and demise, in that Engstrom at all times maintained his vehicle on the proper side of the roadway, but, nonetheless, was struck by the approaching vehicle of Thompson, causing Thompson to collide with the White vehicle.

It is now clearly and unequivocally settled that a 1035 judgment may only be entered if the pleadings, depositions, answers to interrogatories, and admissions of record, together with any affidavits, show as a matter of law that there exists no genuine issue as to any material fact and therefore the moving party is entitled to judgment as a matter of law. *Pocono International Raceway Inc. v. Pocono Produce Inc.*, 503 Pa. 80, 468 A.2d 468 (1983); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979); *Commonwealth v. Transamerica Insurance Co.*, 462 Pa. 268, 341 A.2d 74 (1975). Stated in another way, viewing the record in its broadest form in the light most favorable to the non-moving party, a trial would be an exercise of futility, then in such event the moving party is entitled to summary judgment.

To test the legal sufficiency of the complaint, a motion for summary judgment is in the nature of a broad demurrer which admits the truth of all well-pleaded material and relevant facts. *County of Alle-*

*gheny v. Commonwealth,* 507 Pa. 360, 490 A.2d 402 (1985). To the contrary if the facts as pleaded state a claim for which relief may be granted, summary judgment must be denied. *Cianfrani v. Commonwealth, State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984). Finally is *Schacter v. Albert,* 212 Pa. Super. 58, 239 A.2d 841 (1968). The court, in an extensive discussion of rule 1035, said, inter alia:

"On motion for summary judgment the court must consider the entire setting of the case and all the papers that are included in the record. . . . One who moves for summary judgment has the burden of demonstrating clearly that there is no genuine issue as to any material fact. . . . The court must consider both the record actually presented and the record potentially possible at the time of trial. . . . A hearing on a motion for summary judgment is not a trial on the merits, and the court on such motion should not attempt to resolve conflicting contentions of fact. (citations omitted). . . . A party should not be deprived of an adequate opportunity to fully develop his case by witnesses and a trial, when the issues involved make such procedure the appropriate one. . . . It is often the case that although the basic facts are not in dispute, the parties in good faith may nevertheless disagree about the inferences to be drawn from these facts, what the intention of the parties was as shown by the facts. . . . Under such circumstances the case is not one to be decided by the trial judge on a motion for summary judgment." *Schacter, supra.*

*Commonwealth's Motion for Summary Judgment*

Accepting as true the allegations of plaintiff's complaint that a winter storm created extremely slippery conditions at the accident scene and the ad-

mission of the commonwealth it did not apply anti-skid material thereto until after the accident, does there exist a genuine issue of fact for the jury to resolve; or is the commonwealth entitled to judgment as a matter of law because PennDOT owes no common law duty to protect decedent, and if to the contrary, is PennDOT shielded by sovereign immunity?

PennDOT's first argument is found in *Vitelli v. City of Chester,* 119 Pa. Commw. 58, 545 A.2d 1011 (1988). There, the court held as a matter of law plaintiff could not recover against the city when she fell on a public street caused by tripping on a sheet of solid ice covering a manhole. Although from the facts of *Vitelli, supra,* it was established at least by inference snow was shoveled from the sidewalk into the street, causing ruts, which in turn allegedly caused plaintiff to trip, nonetheless, the condition that existed in the street was a "natural" condition as contrary to an "artificial" cause. The court, citing from precedent, said:

"It is settled law that the duty of a municipality to keep its sidewalks free from snow and ice does not apply in the same degree to the surface of the street, and that there is no liability on the municipality if the injury results solely from natural weather conditions." *Vitelli, supra.*

From this, PennDOT equates the holding of *Vitelli* to the lack of any common law duty on the part of PennDOT to keep its highways free and clear of ice and snow caused by natural conditions. We agree with the commonwealth there is no basis in or logic in exonerating a municipality from a duty to maintain its public streets free and clear of ice and snow, but, to the contrary, burden the commonwealth with the obligation.

The case of *Mayle v. Pennsylvania Dept. of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) abolished

the doctrine of sovereign immunity protecting the commonwealth from tort liability, "except where a legislative act expressly or implicity authorizes suit. This rule of 'sovereign immunity' has been recently upheld by this court. Today we abrogate this doctrine of 'sovereign immunity.' We conclude that this doctrine is unfair and unsuited to the times and that this court has power to abolish the doctrine." *Mayle* at 386, 388 A.2d at 709-10.

In keeping with the abolition declaration and now permitting actions in trespass against the commonwealth, the court held in *Kennedy v. Delaware River Joint Tollbridge Commission,* 479 Pa. 514, 388 A.2d 1049 (1978) wherein plaintiff was injured when his vehicle which he was operating skidded on the Lower Trenton Bridge over the Delaware River and crashed into the structure of the bridge. The Commonwealth Court's granting of a demurrer in favor of the commission was reversed, the court stating:

"Our decision in *Mayle* is controlling here, and compels the conclusion that appellee's preliminary objections should not have been sustained on the grounds of sovereign immunity. Accordingly, the order of the Commonwealth Court is reversed, and the case remanded to that court for further proceedings consistent with this opinion." *Kennedy* at 516, 388 A.2d at 1050.

As a result of *Mayle, supra,* the legislature promulgated the Sovereign Immunity Act of September 28, 1978, P.L. 788, as amended by December 11, 1986, P.L. 1481. As relevent to the issue before us, the act provides, inter alia:

"§8521. Sovereign Immunity Generally—

"(a) *General Rule* — Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. §2310 (relating to sover-

eign immunity reaffirmed; specific waiver) or otherwise.

"§8522. Exceptions to Sovereign Immunity—

"(a) *Liability Imposed* — The General Assembly, pursuant to section 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) only, and only to the extent set forth in this subchapter and within the limits set forth in section 8528 (relating to limitations on damages), sovereign immunity as a bar to an action against commonwealth parties, for damages arising out of a negligent act where the damages would be *recoverable under the common law* or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

"(4) *Commonwealth Real Estate, Highways and Sidewalks* — A dangerous condition of commonwealth agency real estate and sidewalks, including commonwealth-owned real property, leaseholds in the possession of a commonwealth agency and commonwealth-owned real property leased by a commonwealth agency to private persons, and highways under the jurisdiction of a commonwealth agency, except conditions described in paragraph (5).

"(5) *Potholes and other Dangerous Conditions* — A dangerous condition of highways under the jurisdiction of a commonwealth agency created by *potholes or sinkholes or other similar conditions created by natural elements,* except that the claimant to recover must establish that the dangerous condition created a reasonable, foreseeable risk of the kind of injury which was incurred and that the commonwealth agency had actual written notice of the dangerous condition of the highway a sufficient time prior to the event to have taken measures to

protect against the dangerous condition. Property damage shall not be recoverable under this paragraph." (emphasis supplied)

The legislature also implemented Governmental Immunity, 42 Pa.C.S. §8541 et seq. Here, however, we are not dealing with governmental immunity but solely with the sovereign immunity issue.

Our courts have held a negligence claim may not be maintained upon facts on which the law does not impose a duty. *Boyce v. U.S. Steel Corp.*, 446 Pa. 226, 285 A.2d 459 (1971); *Otto v. American Mutual Insurance Co.*, 241 Pa. Super. 423, 361 A.2d 815 (1976).

We have found no cases nor have we been presented any by the parties of the commonwealth's duty to maintain its highways free from ice and snow. The general rule is to the contrary:

"The mere presence of snow or ice on a highway, street or sidewalk in wintertime, causing travelers to skid thereon, does not constitute negligence on the part of the public authority. Reasonable care on the part of the public authority does not require it to remedy a general condition resulting, in the course of nature, from the fall of snow on the public way and from its subsequent thawing and freezing. In order to render the public authority liable, the interference with travel must be unusual or exceptional, that is, different in character from conditions ordinarily and generally brought about by the winter weather in the given locality. Generally, the question whether or not the public authority is liable in damages for an injury sustained by reason of snow or ice on the public way is one of fact for the jury under the particular circumstances of each case." 39 Am. Jur. 2d 906.

In 97 A.L.R. 3d 28, the collection of annotated cases of state jurisdictions throughout the United

States vary in the liability of a governmental agency to maintain its highways free and clear of ice or snow:

"The position of the Pennsylvania courts is unclear with respect to whether a governmental entity is liable, in a motor vehicle accident case, for injury or death resulting from ice or snow on the surface of a highway or street. . . ."

Here follows the discussion of the liability of municipalities in Pennsylvania, citing *McCracken v. Curwensville Borough*, 309 Pa. 98, 163 A.2d 217 (1932) and *Fritzky v. Pittsburgh*, 340 Pa. 217, 16 A.2d 422 (1940), both holding a city is "merely bound to exercise reasonable care and diligence to keep its streets and walks reasonably safe for travelers who are using due care and that its liability should be made to depend on what is reasonable under all the circumstances, paying attention to climatic conditions. Observing that a municipality cannot prevent the general slipperiness of its streets, caused by snow and ice during the winter, but that it can prevent such accumulations thereof, in the shape of ridges and hills, as render their passage dangerous, the court concluded that whether the city had exercised reasonable care and diligence in keeping the highway in question free from obstructions and reasonably safe for travel was a jury question."

Considering the paucity of cases for guidance, indeed, the sheer absence thereof, we look to the legislative intent to determine if the foregoing relinquishment of immunity is applicable to an accumulation of ice and snow on legislative highways.

1 Pa.C.S. § 1921(c) provides that legislative intent controls and matters considered in ascertaining legislative intent are:

"When the words of a statute are not explicit, the intention of the general assembly may be ascertained by considering, among other matters:

"(1) The occasion and necessity for the statute.

"(2) The circumstances under which it was enacted.

"(3) The mischief to be remedied.

"(4) The objective to be attained.

"(5) The former law, if any, including other statutes upon the same or similar subjects.

"(6) The consequences of a particular interpretation.

"(7) The contemporaneous legislative history.

"(8) Legislative and administrative interpretations of such statutes." 1 Pa.C.S. §1921.

Reading and interpreting subsections (4) and (5) of the Sovereign Immunity Act in pari materia, we do not hesitate in holding subsection (4) was never intended to release the commonwealth from its immunity by reason of the accumulation of ice and snow on its highways. A fair reading of the components of this subsection precludes the obligation of the commonwealth to insure its highways will not be subject to ice and slippery conditions for vehicular travel, especially when such conditions occur in an extremely short period of time over a large geographical area throughout the commonwealth. The reference to "and highways under its jurisdiction of a commonwealth agency" is not in our opinion a reference to ice and snow. Under the Construction Statutes, *supra,* the legislature clearly had knowledge of the extent of the highway throughout the commonwealth, the inclement weather conditions, the short period of time in which the highways are rendered dangerous for travel and the inability to maintain the system free from these

elements strongly fall under subsection (5) and (6) of the Construction Statute. It would be virtually impossible for the commonwealth to maintain its system of highways free and clear of ice and snow, irrespective of the cost element. So, too, the common law did not place this obligation on the commonwealth. Likewise, the consequences of any other interpretation would compel the commonwealth to be a guarantor of accident-free travel.

Nor do we conclude subsection (5) of the Sovereign Immunity Act is applicable. This section is limited to potholes and/or sinkholes on the surface of the highway or other similar conditions created by natural elements that would be similar in light of potholes or sinkholes, but not to the accumulation of ice and snow. In our view this section addresses the physical maintenance of the highway only. If the legislature had in mind, in light of the common knowledge of the inclement weather, to encompass ice and snow on the highway, it would have so enacted.

Finally, although it may be argued with some degree of reasonableness, if the commonwealth is not under any duty as a matter of law to maintain its highways free and clear from natural weather conditions, it has nonetheless elected to do so and therefore accepting the duty is bound to perform it without nonfeasance or misfeasance. This common-law tenet is applicable to individuals who perform non-obligatory acts in a negligent manner. This rule, however, cannot be applicable in light of the statute mandating the commonwealth, through PennDOT, to maintain state highways from impediments. 36 P.S. §670-407:

"The department shall purchase all necessary material, and shall appoint and employ all necessary labor or repairmen, who shall at all times in the

year, keep the state highways free from holes, ruts, sticks, loose stones, or other impediments of any kind, which tend to interfere with free and easy travel, or which, if permitted to exist, might tend to the deterioration, injury or destruction of the highway."

Reading the foregoing statute in its broadest light, it does not encompass the maintaining of the highways free from ice and snow, but rather to insure the integrity of the structure of the highway.

We therefore conclude the motion for summary judgment by the commonwealth must be granted.

### Motion of Additional Defendant David A. Engstrom for Summary Judgment

After review of the record we are compelled to deny this motion.

The complaint of defendant Thompson against additional defendant Engstrom alleges Thompson observed the Engstrom vehicle approaching from the opposite direction in the middle of the roadway, and Thompson attempted to maneuver his vehicle; however, the collision occurred between the Thompson and Engstrom vehicles. Thompson alleges Engstrom was negligent in driving on the center of the highway and failed to operate his vehicle to the right of the centerline.

The depositions of Engstrom and Thompson are, at best, in conflict. Engstrom's position is he was at all times traveling in his own lane and it was the Thompson vehicle that skidded into his vehicle. For Thompson's part, he has given three statements to different personnel relating how the accident happened, and in one deposition stated he did not know if his vehicle crossed the centerline into the Engstrom lane of travel. In another deposition Thompson stated he was very close to the centerline

when he observed the Engstrom vehicle close to crossing into the Thompson lane, and Thompson stated he veered to the right.

From the foregoing, it is Engstrom's argument there is no genuine issue of fact because plaintiffs' complaint avers Thompson crossed into the Engstrom's lane, and the testimony of Engstrom that Engstrom did not cross into Thompson's lane, and the investigating officer's deposition that he located debris, to-wit, a reflector from Engstrom's vehicle in Engstrom's lane, and thus conclude this is sufficient to enter judgment as a matter of law in favor of Engstrom.

Engstrom recognizes the difficulty with this argument but seeks to show no genuine issue of fact by relying on the hearsay rule in that the statement of Thompson to an adjuster, that Engstrom was on the centerline or about to cross the centerline into Thompson's lane, is inadmissible. We disagree this forecloses the case against Engstrom's negligence, if any. Considering the potential at time of trial for Thompson to develop his case against Engstrom does not preclude Thompson from testifying, albeit a possibility his version of what happened may again be at variance with the prior depositions. Under these circumstances summary judgment is improper, and we enter the following

## ORDER

And now, November 30, 1988, the motion of defendant Commonwealth of Pennsylvania, Department of Transportation, for summary judgment is granted.

The motion of additional defendant David A. Engstrom for summary judgment is denied.