574 A.2d 728

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellant,**

v.

**Helen M. WELLER, Administratrix of the Estate of Robert Charles Weller, Sr., Deceased, and Helen M. Weller, Individually, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 5, 1990.

Decided April 20, 1990.

Rehearing Denied June 6, 1990.

Brian H. Baxter, Sr. Deputy Atty. Gen., with him, Mark E. Garber, Chief, Tort Litigation Unit, and Ernest D. Preate, Jr., Atty. Gen., for appellant.

Charles L. Bell, Jr., Rosenberg, Sewak, Pizzi & Pell, P.C., Washington, for appellee.

Before CRAIG and PALLADINO, JJ., and NARICK, Senior Judge.

CRAIG, Judge.

The Commonwealth of Pennsylvania, Department of Transportation (DOT) appeals an order by Judge Rodgers of the Court of Common Pleas of Washington County awarding Helen M. Weller, daughter of Robert C. Weller (decedent), survival action damages in the amount of $368,-

865 and wrongful death action damages in the amount of $100,000.[1]

At approximately 5:30 a.m. on the morning of January 28, 1986, the decedent lost control of his vehicle on a bridge located on Interstate 70 and the vehicle vaulted over the bridge railing. It landed on its roof after falling approximately 20–25 feet, causing the death of Mr. Weller.

The undisputed evidence is that three and one-half inches of snow had accumulated on the ground between 7:00 a.m. on January 26 and 7:00 a.m. on January 27. An additional one inch fell by 7:00 a.m. on January 28, the morning of the accident. At the time of the accident, DOT had plowed and treated the road with anti-skid material, but the bridge was largely covered by a sheet of ice.

The dispute revolves around DOT's plowing of the snow. At the trial, Weller contended that DOT negligently piled the snow and ice in such a fashion that it formed a "ramp" over the berm and guardrail, which the decedent's vehicle ascended before clearing the guardrail and falling to the ground. DOT denied creating the ramp, and asserted that (1) it did not have time to remove snow and ice from the berm and guardrail on the bridge after clearing the roadway, and that (2) the speed of the vehicle caused the loss of control.

The jury found 75% of the accident attributable to DOT's negligence. On July 31, 1989, Judge Rodgers issued an order denying DOT's request for judgment n.o.v. or a new trial, and awarded Weller additional delay damages.

DOT now requests this court to enter a judgment n.o.v. on the grounds that either it owes no common law duty to remove ice or snow from a public highway or that Weller's claim must be dismissed because DOT had no written notice as to the dangerous condition. Alternatively, DOT requests

1. The trial court later molded the award to include additional delay damages assessed against DOT and to reflect the jury's finding that the decedent was 25% negligent, thereby amounting to a total award of $282,885.28 for the survival action and $84,865.58 for the wrongful death action.

a new trial on the grounds that either the trial court erred in excluding testimony as to the absence of previous complaints and accidents at the accident location or that the trial court committed prejudicial error in charging the jury that DOT's winter maintenance manual is a regulation and provides the minimum standard of care.

### 1. Cause of Action

The first issue is whether Weller had a cause of action against DOT based on a claim that DOT exhibited negligent conduct in the manner in which it plowed the snow and ice on the road.

DOT, citing *Huber v. Department of Transportation,* 122 Pa.Commonwealth Ct. 82, 551 A.2d 1130 (1988), contends that Weller's claim is negated because DOT owes no common law duty to remove ice or snow from a public road. However, as in *Huber,* this court has more specifically held that DOT has "no duty to remove or treat *natural* accumulations of ice and snow." *Id.,* 122 Pa.Commonwealth Ct. at 87, 551 A.2d at 1132. (Emphasis added).

Therefore, we must determine whether the trial court erred in accepting the jury's conclusion that the accumulation of ice and snow which caused the decedent's accident was an artificial, rather than a natural condition of the land, thus giving rise to a cause of action.

A natural condition of land is defined as a "condition of land [that] has not been changed by any act of a human being...." Restatement (2nd) of Torts § 363, comment b (1965).

██ The record before us indicates that the guardrail is approximately twenty-two and one-half inches high, but only four and one-half inches of snow fell during the forty-eight hours preceding the accident. Additionally, the investigating trooper testified that there was no evidence that the decedent's vehicle struck the guardrail. Because the natural accumulation of snow was at least eighteen inches lower than the guardrail, the jury could reasonably conclude that only an artificial accumulation of snow would

have permitted the decedent's vehicle to clear the guardrail without striking it.

DOT asserts that all shovelled snow is a natural incident of a snowfall, citing *Vitelli v. City of Chester*, 119 Pa.Commonwealth Ct. 58, 545 A.2d 1011 (1988). However, the factual situation in *Vitelli* involved a pedestrian crossing a city street who tripped and fell over ruts and ridges created by traffic proceeding through snow and ice which had accumulated from a snowfall. The parties disagreed as to whether additional snow had been shovelled onto the street by adjoining landowners, but this court stated that shovelled snow does not change the street's character from natural to artificial.

In the present case, Weller is alleging that DOT negligently created the hazardous condition, not that DOT is liable due to the acts of others. Additionally, in *Vitelli*, there is no dispute that snow naturally accumulated on the road. Therefore, passing traffic would have naturally created ruts and ridges, with or without the alleged additional accumulation of shovelled snow. Moreover, snow shovelled onto a street is not analogous to plowing and piling of snow above a guardrail.

Because the natural accumulation of snow which fell, combined with the effects of passing traffic, would not be sufficient to allow a vehicle to vault the guardrail without striking it, the trial court did not err in accepting the jury's finding that DOT's plowing created an artificial accumulation of snow and ice, which rendered the guardrail ineffective and caused the decedent's fatal accident. Therefore, although DOT has no common law duty to remove natural accumulations of ice and snow from a public road, Weller had a cause of action against DOT based on DOT's negligent conduct in creating an artificial accumulation.

Alternatively, DOT raises the defense of sovereign immunity and argues that Weller's claim must be dismissed because DOT did not receive written notice of the alleged dangerous condition of the bridge, as required by section 8522(b)(5) of the Judicial Code, 42 Pa.C.S. § 8522(b)(5).

Section 8522(b) of the Judicial Code provides the following relevant exceptions to sovereign immunity.

(b) Acts which may impose liability.—The following acts by a Commonwealth party may result in the imposition of liability on the Commonwealth and the defense of sovereign immunity shall not be raised to claims for damages caused by:

. . . .

(4) *Commonwealth real estate, highways and sidewalks.*—A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

(5) *Potholes and other dangerous conditions.*—A dangerous condition of highways under the jurisdiction of a Commonwealth agency created by potholes or sinkholes or other similar *conditions created by natural elements,* except that the claimant to recover must establish that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred and *that the Commonwealth agency had actual written notice of the dangerous condition* of the highway a sufficient time prior to the event to have taken measures to protect against the dangerous condition. . . . (Emphasis added).

 DOT asserts that it is protected from liability by section 8522(b)(5); however, reliance on that exception is misplaced because, as stated above, the ramp was not a condition naturally created. Pursuant to section 8522(b)(4), which imposes no requirement of written notice, sovereign immunity is waived where it is alleged that an artificial condition or defect of the land itself causes an injury to occur. *Snyder v. Harmon,* 522 Pa. 424, 562 A.2d 307 (1989).

## 2. Trial Procedure

DOT alternatively seeks a new trial on the grounds that (1) the trial court erroneously excluded testimony as to the absence of complaints and previous accidents at the site of the decedent's accident and (2) the trial court committed prejudicial error in charging the jury that DOT's winter maintenance manual is a regulation and provides the minimum standard of care.

As to the exclusion of the testimony, we will sustain a trial court's ruling unless the trial court exhibited a clear abuse of discretion. *Greek Orthodox Cathedral v. Redevelopment Authority of the City of Philadelphia,* 115 Pa.Commonwealth Ct. 531, 541 A.2d 822 (1988). Judge Rodgers upheld the exclusion of the testimony by stating:

> [I]t is 'character evidence', inadmissible in a civil case, as an attempt to show the defendant generally uses due care. Where the plaintiff seeks to introduce evidence of other accidents, he is required to show that the prior accidents occurred under similar conditions. Where the defendant seeks to show no complaints or similar accidents, it must also show that similar conditions existed. No such offer was made by the defendants in the case at bar.

DOT cites no authority that permits the inclusion of the offered testimony.

Because DOT did not offer to show that similar conditions existed at the time to which the offered testimony related, the trial court did not abuse its discretion by excluding the testimony.

The final issue is whether the trial court erred in charging the jury that DOT's manual is a regulation and provides the minimum standard of care. DOT raises this point of contention because the trial judge included the following "regulations as set forth in [DOT's] Manual" when he charged the jury as follows:

> Widening and cleanup operations are not to begin until all travel, passing and turning lanes are plowed and

treated in accordance with the policies and procedures described in this manual.

Major highways are considered as widened when snow has been plowed or otherwise removed from all areas of traffic operations. Examples of such areas are: shoulders, interchange areas (including ramps and gore areas), turning and vehicle storage lanes. *Guardrails, median barriers and other traffic control devices are to be sufficiently cleared of snow so that they can function as designed. The piling or storing of snow around median and other traffic control devices could result in serious accidents caused by vehicles vaulting over the safety devices.* (Emphasis added).

■ A charge must be looked at in its entirety against the background of evidence to determine whether the trial court committed a prejudicial error in issuing a charge. *Reilly by Reilly v. Southeastern Pennsylvania Transportation Authority,* 507 Pa. 204, 489 A.2d 1291 (1985).

■ The manual is not a formal regulation adopted under the Commonwealth Documents Law [2] in order to have the force of law. However, Arthur Battistone, a DOT assistant maintenance manager in Washington County and Harry Byrd, Jr., a DOT foreman in Washington County, both referred to the manual as "the Bible". Specifically, Battistone stated "[i]t's what we are to follow". No evidence in the record indicates otherwise.

In context, the trial judge used the word "regulations" in a generic sense, rather than in the specific Commonwealth Documents Law sense; in the charge, as quoted above, we note that he labeled the manual's contents simply as "policies and procedures," not as provisions of a law. Because DOT's own witnesses testified as to the definitive authority of the manual, the charge was not prejudicial. Additionally, the fact that the evidence indicates that DOT exhibited a negligent standard of care in piling the snow against the guardrail, regardless of whether the manual provides a

2. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1101–1611.

minimum standard of care, the trial judge's charge is not prejudicial and no new trial is warranted.

Accordingly, the sound decision of Judge Rodgers of the Court of Common Pleas of Washington County is affirmed.

## ORDER

NOW, April 20, 1990, the order of the Court of Common Pleas of Washington County, dated July 31, 1989, at No. 88–254, is affirmed.

PALLADINO, Judge, dissenting.

I must respectfully dissent to the majority opinion.

The majority concludes that the Department of Transportation (DOT) breached a duty owed to the Robert C. Weller (Weller) which resulted in Weller's death. I believe that no duty exists. As a result, no cause of action exits.

Section 8522 of the Judicial Code, 42 Pa.C.S. § 8522, permits the recovery of damages from a commonwealth agency only if "damages would be recoverable under the common law or statute creating a cause of action ..." and one of the enumerated exceptions is applicable. In the instant case, no common law action is available.

In *Huber v. Department of Transportation*, 122 Pa.Commonwealth Ct. 82, 551 A.2d 1130 (1988), we held that the duty to remove ice and snow was a duty "on DOT *on behalf of the general public*" *Id.*, 122 Pa.Commonwealth Ct. at 90, 551 A.2d at 1133 (emphasis in original), and that no duty ran to any particular party so as to create a cause of action. The majority has erroneously concluded that this lack of duty only applies to natural accumulations of ice and snow, and not all accumulations.

However, even if the duty is so limited, the snow in question was a natural accumulation. In *Vitelli v. City of Chester*, 119 Pa.Commonwealth Ct. 58, 545 A.2d 1011 (1988) we held that:

"Shovelled snow is a natural incident of the snowfall which cannot be separated from the snowfall itself. The

fact that snow has been shovelled into the street does not change its character from "natural" to "artificial."

There is no measurable distinction between shovelling snow and plowing snow. As a result, the snow which was allegedly covering the guardrail was a natural accumulation of snow, which DOT had no duty to remove.

Accordingly, I would reverse the trial court and grant judgment n.o.v. in favor of DOT.